Melvin D. MAYES, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 17, 1991.
Decided: Jan. 31, 1992.

Robert D. Goldberg of Biggs and Battaglia, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Div., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, MOORE, and WALSH, JJ.

HORSEY, Justice:

Defendant, Melvin D. Mayes, appeals from the Superior Court's denial of his motion for reduction of sentence under Superior Court Criminal Rule 35(b). We do not find the Superior Court to have abused its discretion in the term of sentence imposed on defendant for the crimes to which he pled guilty. Nor do we find the court to

have committed legal error in relying on allegations in the presentence report that defendant had committed more serious and more extensive crimes than those to which he had pled guilty. The court implicitly found such allegations to be credible and reliable. Since the record supports such findings, we conclude that the court comported with due process by relying on information meeting the "minimal indicium of reliability beyond mere allegation" standard under *United States v. Baylin*, 3d Cir., 696 F.2d 1030 (1982). Therefore, we affirm.

In January 1990, defendant Mayes was indicted on six counts of unlawful sexual intercourse in the first degree and three counts of unlawful sexual contact in the second degree. The indictments concerned offenses allegedly committed in Delaware between October and December 1988 involving the daughter of defendant's girl-friend.

In April 1990, pursuant to a written plea agreement and the Truth in Sentencing Act of 1989, defendant pled guilty to two lesser included offenses of the first and third counts of the indictment. These counts had charged defendant with first degree unlawful sexual intercourse occurring in Delaware between October and December 1988, involving a victim under sixteen (victim then being fifteen years old) who was not the voluntary social companion of the defendant.[1] 11 *Del.C.* § 775.[2] Defendant

---

1. The indictment stated, in pertinent part:
   COUNT I. A FELONY
   UNLAWFUL SEXUAL INTERCOURSE FIRST DEGREE ...
   MELVIN D. MAYS [sic], on or about the month of October, 1988 in the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with [victim] ... while the victim was less than sixteen years of age and the defendant was not the victim's voluntary social companion on the occasion of the crime.

   .    .    .    .    .

   COUNT III. A FELONY
   UNLAWFUL SEXUAL INTERCOURSE FIRST DEGREE ...
   MELVIN D. MAYS [sic], on or about the month of November, 1988 in the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with [victim] ...

while the victim was less than sixteen years of age and the defendant was not the victim's voluntary social companion on the occasion of the crime.

2. Counts I and III of the indictment substantially tracked the first degree unlawful sexual intercourse statute.
   Section 775 provides, in pertinent part:
   (a) A person is guilty of unlawful sexual intercourse in the first degree when he intentionally engages in sexual intercourse with another person and any of the following circumstances exist:

   .    .    .    .    .

   (4) The victim is less than 16 years of age and the defendant is not the victim's voluntary social companion on the occasion of the crime.

   .    .    .    .    .

pled guilty to two counts of third degree unlawful sexual intercourse, involving a victim less than sixteen years of age. 11 *Del.C.* § 773.[3] In exchange for these guilty pleas, the State agreed to "nol pros" the more serious charges against defendant, including multiple counts of unlawful sexual intercourse in the first degree committed in 1988.

In accordance with 11 *Del.C.* § 4331, and Superior Court Criminal Rule 32(c), the court directed a presentence investigation and that a report be prepared. The report contained allegations made in statements to the police by the victim, her family and her psychiatrist of sexual misconduct going back to 1985. The victim stated that she had first been violently sexually assaulted by defendant in 1985, when victim was only eleven years old, and that the assaults had continued thereafter on an almost daily basis for a period of five years. The report asserted that defendant had forced victim against her will to engage in vaginal intercourse and oral sex, and that his conduct had resulted in serious physical and emotional injury to victim. Victim also stated that defendant had subjected her to physical abuse and had also repeatedly threatened to kill her if she told anyone or became involved with anyone else. In addition, victim's mother asserted that defendant had threatened all of her children with physical harm; the mother described defendant as an alcoholic, cocaine addict and substance abuser who often became violent. The report stated that victim as well as her brother had been hospitalized for emotional disturbances attributable to defendant, and that victim exhibited "major depressive disorder with suicide intent" and "post-traumatic stress disorder secondary to long-term, severe, regular sexual abuse." The presentence investigation report was made available to defendant before the sentencing hearing, although the exact date is in dispute.[4]

Defendant's sentencing hearing was held on June 22, 1990. At the hearing, each side presented argument as to the appropriate consideration to be given the allegations in the presentence report. The State argued that the court was entitled to take into consideration allegations of criminal conduct beyond those to which defendant had pled guilty under the court's broad authority to consider any relevant information concerning defendant's history and past behavior. The State also read into the record a letter signed, and purportedly written, by the victim. This letter had not been included in the presentence report or previously disclosed to defendant. The letter described the defendant's sexual attacks upon victim over the prior five years as being with force and against her will. The letter also detailed victim's subsequent emotional and psychological problems attributed to defendant's conduct. Defendant asserted that the State was, in effect, expanding the charges, and objected to the introduction of the victim's statement on the ground of surprise. Defendant also asserted that the allegations were untrue. In particular, defendant took exception to the accusation that defendant had engaged in forcible sexual intercourse against victim's will on an almost daily basis and over a period of years prior to 1988.

After a short statement by the defendant admitting his guilt of the crimes to which he had pled guilty but denying the more serious accusations, the court announced its ruling:

> (2) The victim is less than 16 years of age.
>
> .     .     .     .     .

---

**3.** Section 773 reads, in pertinent part:
   A person is guilty of unlawful sexual intercourse in the third degree when he intentionally engages in sexual intercourse with another person and any of the following circumstances exist:

   .     .     .     .     .

**4.** Defendant's counsel asserts that the report was only made available to him two days before the hearing, while the State argues that it was available two weeks before the hearing.

Mr. Mayes, the detail that went into this police investigation the statements that were made, not only by the victim, but by the victim's mother, by the victim's brother, are consistent every time the statements are made. When this child was 11 years old, 11 years old, you began, in my view, certainly sexually abusing her, psychologically abusing her and her family, and physically abusing her.... And the only thing I regret here today, sir, is this is all that I have to give you because you were permitted to plead guilty to lesser offenses, probably not to have to put that young child through a trial, and that is the only reason why you are not here on much more serious charges.

The court thus relied on, and clearly gave credence to, the charges of victim and her family that defendant had engaged in crimes significantly more extensive and more serious than those to which he had pled guilty, or for which he had been indicted. The court then sentenced defendant to consecutive ten-year terms on each count, the sentence being the maximum permitted by statute. 11 *Del.C.* § 773, as amended by 66 *Del.Laws*, ch. 269, effective June 15, 1988 (reducing the offense from a Class B felony to a Class C felony).

Defendant did not appeal the sentences imposed by Superior Court. However, approximately two months later, defendant filed a motion under Superior Court Criminal Rule 35 for "correction or reduction" of sentence. Superior Court, correctly treating defendant's motion as a motion under Rule 35(b) for reduction of sentence, denied defendant's motion by letter memorandum dated March 15, 1991. Defendant then docketed this appeal.

On appeal, defendant contends that the Superior Court abused its discretion and illegally enhanced his sentence in violation of his right to due process. Defendant essentially makes three claims. First, defendant claims that the sentencing court abused its discretion and violated due process in its reliance on allegations which on their face lacked a minimal indicium of reliability. Second, defendant asserts that the sentencing court abused its discretion in granting him insufficient notice or opportunity to rebut allegations made at the sentencing hearing. Third, defendant asserts that the sentence imposed exceeds the "Truth in Sentencing" or SENTAC, guidelines, and thereby violated 11 *Del.C.* § 4204. We find none of these claims to be meritorious.

■■■ Delaware law is well established that appellate review of sentences is extremely limited. "Appellate review of a sentence generally ends upon determination that the sentence is within the statutory limits prescribed by the legislature." *Ward v. State*, Del.Supr., 567 A.2d 1296, 1297 (1989). In Delaware, a sentencing court has broad discretion to consider "information pertaining to a defendant's personal history and behavior which is not confined exclusively to conduct for which that defendant was convicted." *Lake v. State*, Del.Supr., No. 67, 1984, Horsey, J. (Oct. 29, 1984) [494 A.2d 166 (table)] (ORDER). *See Henry v. State*, Del.Supr., No. 14, 1990, Christie, C.J. (Jan. 15, 1991) [588 A.2d 1142 (table)] (ORDER). The United States Constitution endorses such a broad inquiry.[5] Sentencing courts are specifical-

---

5. In accordance with modern concepts of individualized punishment, a sentencing judge must have "the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949).

The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to threat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice.

*Id.* at 251, 69 S.Ct. at 1085, 93 L.Ed. at 1344. *See Lockett v. Ohio*, 438 U.S. 586, 603, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (when sentencing is a matter of discretion, possession of the greatest information possible is essential to the selection of an appropriate sentence). Moreover, the Constitution does not prohibit a sentencing judge from considering evidence that would be impermissible for the purpose of determining guilt. *See United States v. Baylin*, 3d Cir., 696 F.2d 1030, 1039 (1982) and authorities cited therein.

ly entitled to rely upon information regarding other, unproven crimes. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Columbus*, 9th Cir., 881 F.2d 785 (1989); *Roussell v. Jeane*, 5th Cir., 842 F.2d 1512 (1988); *United States v. Hull*, 9th Cir., 792 F.2d 941 (1986); *United States v. Fulbright*, 5th Cir., 804 F.2d 847 (1986); *United States v. Bowdach*, 5th Cir., 561 F.2d 1160 (1977); *United States v. Marines*, 10th Cir., 535 F.2d 552 (1976); *United States v. Sweig*, 2d Cir., 454 F.2d 181 (1972); *United States v. Metz*, 3d Cir., 470 F.2d 1140 (1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973); *United States v. Doyle*, 2d Cir., 348 F.2d 715, 721, *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965) ("To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions").

■ However, a sentencing court abuses its discretion if it sentences on the basis of inaccurate or unreliable information. *Hamilton v. State*, Del.Supr., No. 153, 1986, Holland, J. (Nov. 12, 1987) [534 A.2d 657 (table)] (ORDER). Moreover, the due process clause of the Fifth Amendment prohibits a criminal defendant from being sentenced on the basis of information which is either false or which lacks minimal indicia of reliability. "[M]aterial false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." *United States v. Robin*, 2d Cir., 545 F.2d 775 (1976) (citing *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948)). *See United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972).

■ Subject to these legal and constitutional constraints, a sentencing court has broad discretion in determining what information to rely on from a presentence report and related sources. *See State v. Huey*, 199 Conn. 121, 505 A.2d 1242 (1986). Thus, in reviewing a sentence within statutory limits, this Court will not find error of law or abuse of discretion unless it is clear from the record below that a sentence has been imposed on the basis of demonstrably false information or information lacking a minimal indicium of reliability. *United States v. Baylin*, 3d Cir., 696 F.2d 1030 (1982); *Hamilton*, at 3. *See Henry*, at 10–12; *Bailey v. State*, Del.Supr., 459 A.2d 531, 535 (1983).

■ As previously noted, the presentence investigation report in this case contained allegations made by the victim and her family to the effect that defendant had committed many more serious crimes over an extended period of years than those to which he had pled guilty, and beyond those for which he had been indicted. Victim's letter also referred to telephone threats made by defendant and his family between trial and sentencing. The court expressly stated that it would not take such allegations into consideration, and we must assume that it did not. A due process claim will only lie in regard to information relied upon by a sentencing court. *See United States v. Robinson*, 6th Cir., 898 F.2d 1111 (1990); *United States v. Ibarra*, 9th Cir., 737 F.2d 825 (1984); *United States v. Allen*, 3d Cir., 494 F.2d 1216, 1218, *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974).

■ However, appellant argues that the court obviously relied on the balance of the disputed allegations and thereby violated his due process rights. Our task, therefore, is to review the disputed information contained in the presentence report upon which the court relied and determine whether this information met the test of "some minimal indicium of reliability beyond mere allegation." *Baylin*, 696 F.2d at 1040; *United States v. Weston*, 9th Cir., 448 F.2d 626 (1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).[6]

6. There is some recent indication that this standard of necessary reliability may be even greater where the sentencing court relies more heavily on disputed information, so as to greatly increase a sentence. *United States v. Kikumura*, 3d Cir., 918 F.2d 1084 (1990). However, *Kikumura* involves the federal sentencing system of enhancement levels in which it is easy to gauge

"[R]eliance upon information which is materially untrue or, if not shown to be false, to be so lacking in indicia of reliability as to be of little value violates due process, and requires remand for resentencing." *United States v. Safirstein,* 9th Cir., 827 F.2d 1380, 1385 (1987).

■ Defendant challenges the veracity and reliability of all allegations going beyond the crimes to which he pled guilty. To the extent that these allegations were contained in the indictment, the sentencing court was clearly entitled to rely on them because the indictment itself provides sufficient reliability to meet the constitutional standard. *United States v. Metz,* 3d Cir., 470 F.2d 1140 (1972), *cert. denied,* 411 U.S. 919, 93 S.Ct. 1558, 36 L.Ed.2d 311 (1973). To the extent that the allegations went beyond the terms of the indictment, sufficient indicia of reliability can be found in the record before the sentencing court. This record consists of the presentence investigation report, with exhibits, and the victim's letter. The presentence investigation report consists primarily of an adoption of the New Castle County Police report, with additional statements made by the victim and her family to the investigating officer. It sets out the victim's description of sexual abuse perpetrated by the defendant and extending over a five-year period. It also paraphrases statements by the victim's family describing the defendant and repeating the victim's allegations. The statements of the victim's family included first-hand observations of incidents which corroborated the allegations of a long history of sexual contact between defendant and victim. The report also extensively details the troubles of the victim's family, including statements by psychiatric professionals which tend to corroborate allegations that victim was subject to prolonged sexual abuse.

Since this case involves a plea without a trial, the sentencing court must necessarily make its own determinations of credibility from the information provided in the presentence report.[7] Moreover, in cases of inherently private crimes involving sexual offenses such as these, when not tried, the sentencing court is unlikely to have access to "hard evidence," [8] leaving only corroboration as a basis for determining the reliability of disputed claims.

We find the Superior Court to have adhered to the due process standard. The court was persuaded that the victim's statements and those of the other members of her family were "consistent" and corroborated by the reports of health care professionals. On this record, we cannot conclude that the information relied upon was "demonstrably false." *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Nor do we conclude that the information relied upon lacked "some minimal indicium of reliability beyond mere allegation." *Baylin,* 696 F.2d at 1040. On the contrary, the allegations on which the court has chosen to rely are presented in the direct statements of an identified first-hand witness, and corroborated by the statements of other identified witnesses.[9] "Consistent with due process

---

exactly how much a sentencing judge has relied upon particular information. *Id.* at 1102–03. We find this authority inapplicable to the Delaware scheme.

7. Through a trial, a court has an opportunity to assess witness credibility, especially under cross-examination. *See, e.g., United States v. Matthews,* 3d Cir., 773 F.2d 48, 52 (1985) (evidence of and testimony about defendant's confession both subject to thorough cross-examination); *United States v. Fatico,* 2d Cir., 579 F.2d 707, 713 (1978) ("reliability of evidence that is difficult to challenge must be ensured through cross-examination or otherwise, by demanding certain guarantees of reliability").

8. *Compare, e.g., United States v. Galvan,* 5th Cir., 949 F.2d 777 (1991) (intercepted phone calls provide sufficient reliability); *United States v. Herrera,* 6th Cir., 928 F.2d 769 (1991) (occurrence of event predicted by informant makes informant's statements reliable); *United States v. Hull,* 9th Cir., 792 F.2d 941 (1986) (trial evidence of other thefts corroborated allegations); *United States v. Needles,* 2d Cir., 472 F.2d 652, 657 (1973) (allegations corroborated by defendant's admissions and by "real evidence").

9. In the federal cases in which reliability of information has been found constitutionally insufficient, the allegations in question have been based exclusively on uncorroborated hearsay testimony from government agents. *See United*

the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance." *State v. Huey,* 199 Conn. 121, 505 A.2d 1242, 1246 (1986) (citing *Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959)). In *Huey,* the court found that the "persuasive, reliable information in the record in this case including the *statement of the victim* " met the constitutional standard (emphasis added). *Id.* Here we find neither a due process violation nor that the Superior Court abused its discretion in taking into consideration the pre–1988 allegations against defendant as sufficiently reliable for purposes of determining the appropriate sentence for the crimes to which defendant pled guilty.

■ Defendant's second claim is that he was not given sufficient notice or opportunity to rebut the allegations made against him at the sentencing hearing. "[A] defendant who contests the accuracy of information contained in a presentence report must be given the opportunity to explain or rebut any uncorroborated evidence upon which the court relies in making its sentencing determination." *Lake v. State,* Del.Supr., No. 67, 1984, Horsey, J., at 3 (Oct. 29, 1984) [494 A.2d 166 (table)] (ORDER). *See United States v. Espinoza,* 5th Cir., 481 F.2d 553, 556 (1973) ("where a sentencing judge explicitly relies on certain information in assessing a sentence, fundamental fairness requires that a defendant be given at least some opportunity to rebut that information"). However, defendant did not request a continuation or an opportunity to present rebuttal evidence. We find defendant to have therefore waived any claim he might have had arising from the sentencing hearing itself with regard to inadequate notice or opportunity to rebut the allegations against him contained in the presentence investigation report or presented at the hearing. Supr.Ct.R. 8. Moreover, any issue as to timing is eliminated by defendant's right, which he exercised, to

file a motion for reduction of sentence. Super.Ct.Crim. R. 35(b). Defendant thus had two months in which to marshal any rebuttal evidence he wished to present. After careful examination, we find that defendant's motion for reduction of sentence did not present any evidence which made any information relied upon by the sentencing court constitutionally unreliable. *Baylin,* 696 F.2d at 1040. We therefore find that the Superior Court neither committed legal error nor abused its discretion in denying defendant's motion.

■ Defendant's final claim is that the sentencing court impermissibly exceeded the guidelines of the Truth in Sentencing Act ("SENTAC"). It is established Delaware law that a defendant has no legal or constitutional right to appeal a statutorily authorized sentence simply because it does not conform to the sentencing guidelines established by the Sentencing Accountability Commission. *Gaines v. State,* Del. Supr., 571 A.2d 765 (1990). As this Court stated in *Gaines:*

"Appellate review of a sentence generally ends upon determination that the sentence is within the statutory limits prescribed by the legislature." *Ward v. State,* Del.Supr., 567 A.2d 1296 (1989) (citing *Seeney v. State,* Del.Supr., 211 A.2d 908 (1965)). Under the circumstances, the fact that the trial court's sentences exceeded those recommended by the SENTAC guidelines provides no basis for appeal. *Id.*

571 A.2d at 766–67. As we stated in *Ward v. State,* Del.Supr., 567 A.2d 1296, 1297 (1989):

The sentencing standards are considered voluntary and non-binding; thus, no party to a criminal case has any legal or constitutional right to appeal to any court a statutorily authorized sentence which does not conform to the sentencing standards.

*States v. Reme,* 11th Cir., 738 F.2d 1156, *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985); *United States v. Lemon,* D.C.Cir.,

723 F.2d 922 (1983); *United States v. Weston,* 9th Cir., 448 F.2d 626 (1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).

(quoting *Administrative Directive Number Seventy–Six,* Del.Supr., Christie, C.J. (Sept. 15, 1987)).

Defendant contends that the court violated 11 *Del.C.* § 4204(m) [10] in failing to make a matter of record its reasons for imposing a sentence in excess of the SENTAC guidelines. Defendant states that the court failed to comply with section 4204(m) by giving a basis for the enhanced sentence and identifying the aggravating factors justifying the sentence imposed. However, Section 4204(m) may not be reasonably construed as a mandate or basis for reversible error since we have previously ruled that the SENTAC guidelines provide "no basis for appeal." *Gaines,* 571 A.2d at 767.

\*　　\*　　\*

AFFIRMED.

---

**10.** 11 *Del. C.* § 4204(m) provides:
 Whenever a court imposes a sentence inconsistent with the presumptive sentences adopted by the Sentencing Accountability Commission, such court shall set forth on the record its reasons for imposing such penalty.